IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SULY COLON-SANCHEZ,

                   Plaintiff,

     v.

COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.

_____

Civil Action No.
5:14-CV-0705 (TJM/DEP)

<u>APPEARANCES:</u>

<u>FOR PLAINTIFF</u>:

DOLSON LAW OFFICE
126 North Salina Street
Suite 3B
Syracuse, NY 13202

<u>FOR DEFENDANT</u>

HON. RICHARD S. HARTUNIAN
United States Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>OF COUNSEL:</u>

STEVEN R. DOLSON, ESQ.

JEREMY A. LINDEN, ESQ.
Special Assistant U.S. Attorney

<u>REPORT AND RECOMMENDATION</u>

This is an action brought by plaintiff Suly Colon-Sanchez, pursuant to 42 U.S.C. §§ 405(g) and 1383 seeking judicial review of an adverse determination of the Acting Commissioner of Social Security, finding that she was not disabled at the relevant times and is therefore ineligible for receipt of disability insurance benefits and supplemental security income ("SSI") payments. Plaintiff, who suffers from both physical and mental impairments, contends that the Commissioner's determination is not supported by substantial evidence. For the reasons set forth below, I disagree, and therefore recommend that judgment on the pleadings be granted to the defendant affirming the Commissioner's determination and dismissing her complaint.

I.    <u>BACKGROUND</u>

Plaintiff was born in June 1963; she is currently fifty-two years old, and was forty-nine years of age at the time of the second administrative hearing in this matter. Administrative Transcript ("AT") 24, 243, 336. She is unmarried and resides alone in an apartment in Syracuse, New York. AT 37, 39, 244. Plaintiff is five-feet, two-inches in height, and while her weight has fluctuated between 208 and 232 pounds, she weighed 208 pounds at

the time of the first hearing in this matter, June 17, 2010.[1] AT 38. Plaintiff is a high-school graduate and has achieved an associate's degree in the field of industrial electronics. AT 40, 391. In the past, up until 2005 or 2006, she worked as a licensed electrician in Puerto Rico, in both residential and industrial settings. AT 40-43. Plaintiff also worked briefly for Federal Express, in 2008, although that job lasted only a few days and she was forced to quit due to back and leg pain. AT 41, 293, 295.

Over the years, plaintiff has received treatment for several physical conditions, principally from the Syracuse Community Health Center, where she was treated since 2008. AT 391-395, 429, 654-95, 711-12, 715-31. Plaintiff underwent left knee arthroscopic surgery to repair a meniscus tear on June 5, 2012. AT 700-01. In addition, plaintiff has had her gall bladder surgically removed. AT 717. Among the physical impairments from which plaintiff suffers is an abdominal condition that has been diagnosed as having possibly been caused by sphincter of Oddi dysfunction.[2] AT 753. As a result of that condition plaintiff experiences significant diarrhea,

---

[1]    Plaintiff has been formally diagnosed as suffering from obesity. *See, e.g.,* AT 409, 417, 421, 730.

[2]    The condition sphincter of Oddi dysfunction is defined by one authoritative source as follows: when the sphincter muscle does not open when it should, preventing bile and pancreatic juice from flowing through and resulting in a backup of digestive juices. Cleveland Clinic. *What is sphincter of Oddi dysfunction?* https://my.clevelandclinic.org/health/diseases_conditions/hic_gastrointestinal_disorders /hic-sphincter-of-oddi-dysfunction (last visited Jan. 25, 2016).

requiring her to go to the bathroom as much as twelve times daily. AT 722; *see also* AT 830, 835 (plaintiff reporting that she has to go to the bathroom between four and five times daily).

Plaintiff also suffers from a mental condition that has been variously diagnosed as depression, AT 421, 726, or depressive disorder ("DO") not otherwise specified ("NOS"), AT 458, 667, 675, 677 and anxiety, AT 666, 675, 730, or anxiety NOS, AT 356, 670, 674, 677.[3] For her mental health conditions, plaintiff has received treatment from the Brownell Center for Behavioral Health, beginning on March 3, 2009, and continuing through September 18, 2009.[4] AT 341-51, 449-59.

Plaintiff utilizes assistive devices to ambulate, including a cane and a walker. AT 54, 82, 92. Plaintiff has not, however, undergone any pain injections, nor does she utilize a TENS unit to help manage her pain.[5] AT 54. Over time, plaintiff has been prescribed a variety of drugs to address

---

[3]      Plaintiff has also been diagnosed as suffering from dysthymia, AT 666, 670, 674, and obsessive compulsive disorder, AT 667.

[4]      Plaintiff was reportedly discharged by that provider on December 16, 2009 "due to violation of attendance, contracting and inappropriate behavior." AT 456.

[5]      A TENS unit is described as a "transcutaneous electrical nerve stimulation unit, uses electric current produced by a device to stimulate the nerves for therapeutic purposes." Nat'l Ctr. for Biotech. Info., *Transcutaneous electrical nerve stimulation (TENS) for chronic pain*, Nat'l Libr. of Med., http://www.ncbi.nlm.nih.gov/pubmed/11687055, (last visited Jan. 22, 2016).

her physical and mental problems. AT 59, 324, 354, 358, 350, 345, 624, 627, 651. Plaintiff smokes between one and two packs of cigarettes per day. AT 349, 354, 358, 432, 717; *but see* AT 406 (plaintiff reporting that she does not smoke). Plaintiff has also a history of cocaine, marijuana, and alcohol abuse. AT 356, 358. Plaintiff has been assigned a global assessment of functioning ("GAF") score of between 55 and 60 at various points in time.[6] AT 345, 347.

II.   PROCEDURAL HISTORY

   A.   Proceedings Before the Agency

On April 14, 2009, plaintiff submitted applications for disability insurance benefits and SSI payments, claiming that she is disabled and alleging a disability onset date of December 22, 2007. AT 236-46. Following an initial denial of those applications, a hearing was conducted on June 17, 2010, by Administrative Law Judge ("ALJ") F. Patrick Flanagan. AT 31-71. ALJ Flanagan issued a written decision on July 28, 2010, concluding that plaintiff was not disabled at the relevant times and therefore denying her application for benefits. AT 119-140. That

---

[6]   The GAF scale considers psychological, social and occupational functioning on a hypothetical continuum of mental health. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (Am. Psychiatric Assoc., 4th ed. Text Revision 2000) ("DSM-IV-TR"). A GAF score of between fifty-one and sixty indicates moderate difficulty in social, occupational or school functioning. DSM-IV-TR at 34.

determination, however, was vacated by the Social Security Administration Appeals Council on March 22, 2012, and the matter was remanded for further consideration. AT 142-43. In its determination, the Appeals Council identified three specific issues to be addressed on remand, including (1) inclusion of the finding that plaintiff suffers from moderate difficulties in social functioning in the ALJ's Residual Functional Capacity ("RFC") determination; (2) explanation of how the RFC reflects the finding of Dr. Kalyani Ganesh, a consultative examiner, that plaintiff suffers from mild to moderate limitations in lifting and in other similar exertional matters; and (3) consideration of whether the testimony of a vocational expert should be elicited in order to determine the issue of disability. *Id.*

Following the Appeal Council's remand, ALJ Flanagan conducted a second hearing on December 20, 2012. AT 72-115. The ALJ subsequently issued a new determination, dated February 13, 2013, again concluding that plaintiff was not disabled at the relevant times and therefore is ineligible for receipt of Social Security benefits. AT 10-30.

In his most recent decision, after noting that plaintiff was insured through March 31, 2010, the ALJ first determined that the plaintiff had not engaged in any substantial gainful activity since December 22, 2007. AT 16. He next concluded at step two of the disability analysis that she suffers

6

from lumbar spine arthritis, osteoarthritis affecting her knees, obesity, and depressive and anxiety disorders. *Id.* The ALJ further found, however, that plaintiff's conditions do not meet or medically equal, either individually or in combination, any of the listed, presumptively disabling conditions set forth in the Commissioner's regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

The ALJ next surveyed the available evidence and concluded that despite her conditions, plaintiff retains the RFC to perform a full range of light work, subject to the following additional limitations:

> In addition, she can follow and understand simple directions and instructions, and maintain attention and concentration in a structured environment. She has some difficulty handling stressors (that is, she cannot engage in negotiation or confrontation, and cannot be responsible for the safety of others), but can withstand ordinary production requirements of simple work.

AT 19. Applying this RFC, the ALJ concluded that plaintiff is unable to perform her past relevant work as an electrician because it includes between a medium- and heavy-exertional component as performed both in the national economy and by the plaintiff. AT 23. The ALJ next observed that if the medical vocational guidelines set forth in the regulations (the "Grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, were applied, a finding of no disability would be directed by Grids Rule 202.21. AT 23. The ALJ

7

concluded, however, that the ability of the plaintiff to perform all or substantially all of the requirements of light work would be substantially eroded by her additional limitations, and went on to find, based on the testimony of a vocational expert, that plaintiff nonetheless retains the ability to perform in three positions available in the national or local economy, including as a routing clerk, a checker, and an order caller. AT 23-24. Based upon his finding, ALJ Flanagan concluded that the plaintiff was not disabled at the relevant times and is therefore ineligible to receive social security benefits. *Id.*

The ALJ's decision became a final determination of the agency on May 16, 2014, when the Appeals Council denied plaintiff's request for review of that opinion. AT 1-6.

B.    Proceedings in This Court

Plaintiff commenced this action on June 12, 2014. Dkt. No. 1. On October 1, 2014, issue was joined by the Commissioner's filing of an answer, accompanied by an administrative transcript of the record of proceedings and evidence that was before the agency. Dkt. Nos. 9, 10. With the filing of plaintiff's brief on November 10, 2014, Dkt. No. 12, and that on behalf of the Commissioner on January 27, 2015, Dkt. No. 16, the matter is now ripe for determination, and has been referred to me for the

issuance of a report and recommendation pursuant to 28 U.S.C. §
636(b)(1)(B) and Northern District of New York Local Rule 72.3(d). *See*
Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Standard of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the
Commissioner is limited; that review requires a determination of whether
the correct legal standards were applied, and whether the decision is
supported by substantial evidence. *Veino v. Barnhart*, 312 F.3d 578, 586
(2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal
v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp.
2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d
983, 985 (2d Cir. 1987)). Where there is reasonable doubt as to whether
the Commissioner applied the proper legal standards, his decision should
not be affirmed even though the ultimate conclusion reached is arguably
supported by substantial evidence. *Martone*, 70 F. Supp. 2d at 148 (citing
*Johnson*, 817 F.2d at 986). If, however, the correct legal standards have
been applied, and the ALJ's findings are supported by substantial
evidence, those findings are conclusive, and the decision should withstand
judicial scrutiny regardless of whether the reviewing court might have

reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel,* 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401(1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co.*, 308 U.S. at 229); *Martone,* 70 F. Supp. 2d at 148 (quoting *Richardson*). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the

agency's determination, the agency's decision should be reversed. 42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148. In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning. *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)). A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level. *See Lisa v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991). Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency. *See Parker*, 626 F.2d at 235; *see also Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).


B.      Disability Determination: The Five-Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to

engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

In addition, the Act requires that a claimant's

> physical or mental impairment or impairments
> [must be] of such severity that he is not only unable
> to do his previous work but cannot, considering his
> age, education, and work experience, engage in
> any other kind of substantial gainful work which
> exists in the national economy, regardless of
> whether such work exists in the immediate area in
> which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he
> applied for work.

42 U.S.C. § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be

employed in determining whether an individual is disabled. *See* 20 C.F.R.

§§ 404.1520, 416.920. The first step requires a determination of whether

the claimant is engaging in substantial gainful activity; if so, then the

claimant is not disabled, and the inquiry need proceed no further. 20

C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not gainfully

employed, then the second step involves an examination of whether the

claimant has a severe impairment or combination of impairments that

significantly restricts his or her physical or mental ability to perform basic

work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work. *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728

F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

    C.    <u>Analysis</u>

        1.    <u>Credibility</u>

In his decision, ALJ Flanagan concluded that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms claimed by her, but her statements concerning the intensity, persistence, and limiting effect of those symptoms were not fully credible. AT 21. In the first argument in support of her challenge to the Commissioner's determination, plaintiff contends that the ALJ's credibility assessment is flawed.

An ALJ must take into account subjective complaints of pain in making the five step disability analysis. 20 C.F.R. §§ 404.1529(a),(d), 416.929(a),(d). When examining the issue of pain, however, the ALJ is not required to blindly accept the subjective testimony of a claimant. *Marcus*, 615 F.2d at 27; *Martone*, 70 F. Supp. 2d at 151 (citing *Marcus*). Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain. *See Mimms v. Heckler*, 750 F.2d 180, 185-86 (2d Cir. 1984). In deciding how to exercise that discretion, the ALJ must consider a variety of factors that ordinarily would be relevant on the issue of credibility in any context, including the claimant's credibility,

his or her motivation, and the medical evidence in the record. *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, J., *adopting report and recommendation by* Smith, M.J.) (citing *Marcus*, 615 F.2d at 27-28)). In doing so, the ALJ must reach an independent judgment concerning the actual extent of pain suffered and its impact upon the claimant's ability to work. *Sweatman*, 1998 WL 59461, at *5.

When such testimony is consistent with and supported by objective clinical evidence demonstrating that the claimant has a medical impairment that one could reasonably anticipate would produce such pain, it is entitled to considerable weight.[7] *Barnett*, 13 F. Supp. 2d at 316; *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a). If the claimant's testimony concerning the intensity, persistence or functional limitations associated with his or her pain is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony, including: (1) daily activities; (2) location, duration, frequency and intensity of any symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of any medications taken;

---

[7]     In the Social Security Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment that would reasonably be expected to produce the pain or other symptoms alleged. 42 U.S.C. § 423(d)(5)(A).

(5) other treatment received; and (6) other measures taken to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony. *Martone*, 70 F. Supp. 2d at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). If such testimony is rejected, however, the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence. *Martone*, 70 F. Supp. 2d at 151 (citing *Brandon v. Bowen,* 666 F. Supp. 604, 608 (S.D.N.Y. 1987)). Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review. *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).

It seems clear that the plaintiff does suffer from some degree of discomfort as a result of her physical condition. The fact that she suffers from discomfort, however, does not automatically qualify her as disabled because "disability requires more than mere inability to work without pain." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

In his decision, ALJ Flanagan went to great lengths to analyze the plaintiff's credibility. Addressing plaintiff's mental condition, the ALJ noted that she has received only minimal mental health treatment and has no history of hospitalization for that condition. Turning to the physical limitations, a careful review of the medical records reflects that, despite her claim of back pain, she has made only one report of back pain, in March of 2010. AT 744. As was previously noted, plaintiff has undergone relatively conservative pain management, including injections, and does not utilize a TENS unit.

It is true, as plaintiff argues, that before drawing an adverse inference from a claimant's failure to obtain medical treatment, an ALJ must consider any explanations offered to explain why further treatment was not sought, including, for example, an inability to afford such treatment. *See* Social Security Ruling ("SSR") 96-7p. In this instance, however, plaintiff has not offered any alternative explanations for her failure to secure further medical treatment, and it appears that she has received treatment through such publically funded providers as the Syracuse Community Health Center.

Of significance to the ALJ, insofar as plaintiff's credibility is concerned, is the fact that plaintiff stated to her primary physician, and to

her social worker, that she has had stage three cancer when, in fact, her medical records reflect, the representation was untrue and instead, she suffered only from the discovery of a non-cancerous polyp during the course of a colonoscopy. *See* AT 22, 77-78. The ALJ was well within his rights to consider this exaggeration as probative of plaintiff's lack of credibility. *Pidkaminy v. Astrue*, 919 F. Supp. 2d 237, 249 (N.D.N.Y. 2013) (Scullin, J.).

In sum, having reviewed the ALJ's credibility determination, I find that it is properly explained and supported by substantial evidence.[8]

### 2.    RFC Determination

Plaintiff next challenges the mental and physical components of the ALJ's RFC determination, claiming that they ignore contrary evidence and are not supported by substantial evidence. A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. § 404.1545(a). An

---

[8]    I acknowledge that Dr. Yolanda Augustine, a physician with the Syracuse Community Health Center, stated in one progress note, "In reference to [plaintiff's] back and Jobs Plus which she presented a Jobs Plus form, I feel that she is capable of working 10 hours a week, a desk job assignment only." AT 409. There is no explanation, however, as to why plaintiff's limitations preclude her from working longer hours, if Dr. Augustine's statement can properly be interpreted as opining that plaintiff is capable of performing a *maximum* of ten hours of work per week. In any event, it appears to represent an isolated note from April 2009, and therefore does not significantly undermine the ALJ's credibility determination.

RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology (including pain), and other limitations that could interfere with work activities on a regular and continuing basis. *Id.*; *Martone*, 70 F. Supp. 2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push, and pull. 20 C.F.R. §§ 404.1545(b), 404.1569a. Nonexertional limitations or impairments, including impairments that result in postural and manipulative limitations, must also be considered. 20 C.F.R. §§ 404.1545(b), 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e). When making an RFC determination, an ALJ must specify those functions that the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris*, 728 F.2d at 587). An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations. *Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990) (McAvoy, J.)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997).

In this instance, the ALJ's RFC determination is well-supported. The exertional components of that determination, in which the ALJ concluded that plaintiff can perform a full range of light work,[9] draw support from the consultative examination of Dr. Kalyani Ganesh, performed on June 11, 2009, who noted only mild-to-moderate limitations in plaintiff's ability to lift, carry, push and pull, and no physical limitations to her standing, sitting, and walking.[10] AT 360.

The mental aspect of the ALJ's RFC finding, limiting the plaintiff to following simple instructions in a relatively stress-free, structured

---

[9]     By regulation, light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[10]     While it is true that during the physical examination, Dr. Ganesh noted that plaintiff could not squat, AT 359, and there is no limitation expressed in the ALJ's RFC concerning squatting, this limitation was not included in the medical source statement portion of Dr. Ganesh's opinion. AT 360. It is noted, moreover, that light work requires only occasional stooping. SSR 83-10.

environment, is supported by the consultative opinions of Dr. Kristen

Barry. In her medical source statement, Dr. Barry stated the following:

> The claimant is able to follow and understand simple directions and instructions. She is a fairly intelligent individual. She is able to maintain her attention and concentration in a structured environment. She has been able to perform complex tasks independently. She states that she is unable to work because of health problems and chronic pain. She has also had some difficulty handling stressors. She has a history of substance dependents issues and she gets easily frustrated.

AT 356. In addition to that consultative report, the limited mental health

treatment sought by the plaintiff, in combination with the mild findings

noted and regular modest GAF scores, lend further support to the mental

element of the ALJ's RFC findings.

Having carefully considered the medical evidence in the record, I

find that the ALJ's RFC determination is supported by substantial

evidence.[11]

---

[11]     As was previously noted, plaintiff has been diagnosed as being obese. Obesity in and of itself was eliminated as a listed disability in October of 1999. Social Security Ruling 00-3p. Its description as a potential contributing factor is now referenced in section 1.00(Q) of the listings. Under that provision, when considering whether a claimant's impairment meets or equals one or more of the conditions listed in the regulations, that person's obesity and its effects in combination with musculoskeletal impairments must be considered, in the context of the claimant's specific circumstances. *See* 20 C.F.R. Pt. 404, Subpt. P, App.1, § 1.00(Q); *see also* SSR 02-1p; *Orr v. Barnhart,* 375 F. Supp. 2d 193, 199 (W.D.N.Y. 2005). In this case, the ALJ properly considered plaintiff's obesity, AT 22, and there is no medical evidence in the record to suggest that her obesity substantially limits her ability to perform basic work

3.      Effects of Non-Exertional Limitations

Plaintiff also argues that the ALJ's determination is not supported because it fails to take into account her sphincter of Oddi dysfunction and other non-exertional impairments and the effects they would have upon her ability to perform work-related functions.

To be sure, it is incumbent upon an ALJ to consider all impairments, both exertional and non-exertional, that stand as impediments to a claimant's ability to perform work-related functions. The key, however, is that to be significant, including at step two of the disability protocol, an impairment must *substantially* limit one's ability to perform major life activities. 42 U.S.C.A. § 12102; *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998). In this instance, for example, although plaintiff suffers from diabetes, the ALJ correctly concluded that the condition is well-controlled through medication, and thus does not have any significant impact upon her ability to perform major life activities. *Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012) (finding that where a plaintiff's back pain was fairly well-controlled without medication and he could perform light-to-moderate activity, the ALJ's determination that the condition did not render him disabled was appropriate). Similarly, although she has been diagnosed as

activities.

having sphincter of Oddi dysfunction and suffers from fecal incontinence, there is no medical evidence in the record to show how that condition would substantially limit her ability to perform work-related functions. No physician, for example, has opined that if she were to work plaintiff would require special bathroom accommodations. In the absence of such evidence, the ALJ properly considered plaintiff's allegations and concluded that those other conditions did not significantly restrict her ability to perform basic work-related functions.

IV.     SUMMARY AND RECOMMENDATION

Undeniably, plaintiff suffers from several limiting physical and mental conditions. There is no competent medical evidence in the record, however, to suggest that she cannot meet the requirements of the RFC attributed to her by the ALJ. And, given the fact that the hypothetical posed to the vocational expert in this case closely approximated plaintiff's RFC, and the vocational expert testified to the availability of at least three jobs that the plaintiff is capable of performing, the Commissioner's determination that plaintiff was not disabled at the relevant times is supported by substantial evidence. Accordingly, it is hereby respectfully

RECOMMENDED that defendant's motion for judgment on the pleadings be GRANTED, the Commissioner's determination AFFIRMED, and plaintiff's complaint be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:     January 25, 2016
           Syracuse, New York

David E. Peebles
U.S. Magistrate Judge